IN RE ESTATE OF EDWARD H. EVERETT.

May Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 2, 1945.

*Christopher A. Webber* (Hardy, Stancliffe, & Hardy, Theodore L. Harrison and Glen W. Watkins of the New York bar, of counsel) for the appellant.

*Warren R. Austin* for the appellees.

MOULTON, C. J. Edward H. Everett, late of Bennington, died testate on April 28, 1929. He had been twice married. Surviving him were his widow, the executrix of his estate, three daughters by his first wife, and two daughters by his second wife. The present proceeding, which is the fifth in which one aspect or another of controversy over his estate has reached this court (See *Everett v. Wing,* 103 Vt 488, 156 A 393, cert den 284 US 690, 52 S Ct 266, 76 L ed 282; *In Re Everett's Will,* 105 Vt 291, 166 A 827; *In Re Estate of Edward H. Everett,* 112 Vt 252, 23 A2d 202; *In Re Estate of Edward H. Everett,* 113 Vt 265, 33 A2d 223), is an appeal from the allowance of two supplemental accounts of the executrix and administrator c. t. a., filed as provided by P. L. 2809, and covering the periods between June 18, 1936,

and August 31, 1937, and between August 31, 1937, and September 19, 1941, respectively. These accounts were approved and allowed by the Probate Court, after notice and hearing, and thereafter, on appeal to the County Court, they were found to be true and correct, and to contain proper charges and credits, except as to certain items, not material here, which were left for a later accounting. The appellant, Mary A. Turri, a daughter of the testator and a legatee named in his will, has brought the cause before us on exceptions.

From the findings of fact it appears that the contest over the will of Mr. Everett, instituted by the children by his first wife, was settled by a written agreement, dated June 14, 1934. By the terms of this agreement, judgment was to be entered that "the instrument presented is the last will and testament of Edward H. Everett without costs to either party to be certified back to the Probate Court for the District of Bennington"; the vacancy caused by the death of George R. Colby, named in the will as co-executor with Mrs. Everett, was to be filled by the appointment of Senator Warren R. Austin, as administrator c. t. a.; the net estate was to be divided among the testator's five children; Mrs. Everett was to assign and transfer to the children, either directly or in trust for them, the shares of corporate stock in the Edward H. Everett Company, and certain other property which had been bequeathed to her by the will; and that "no claim will hereafter in any manner be made by the contestants (either as heirs, legatees, or otherwise) pertaining to or concerning any contract, gift, or transfer heretofore made with or to Mrs. Everett (or the two minor children) by, for, on behalf, or at the request of, Mr. Everett." The agreement also contained the following clause: "It is expected that there will be claims for taxes and for other costs of administration, and of these items any party hereto may object on presentation thereof for allowance by the Court." By a "Supplementary Clarifying Agreement" dated the same day as the agreement of settlement and attached to it, it was provided that: "In consideration of the execution of the agreement between the parties bearing this date, it is agreed that, inasmuch as the estate is being divided among the five children, all inheritance, succession and estate taxes on the property so divided shall be paid by the estate."

On June 18, 1936, upon due notice and hearing, the Probate Court, by its decree, approved and allowed the final account of the

executrix and the administrator c. t. a., and ordered a partial distribution of the estate. Among the items of the account were the payment to the Treasurer of the State of Vermont of an estate tax in the sum of $84,490.14, and to the United States for the federal estate tax, with interest, in the sum of $28,500.93. The amount of the State tax depended entirely upon the computation of the federal tax. It represented the credit of 80% of the latter tax, allowed by the Federal Internal Revenue Statute (26 USCA para. 813-b), and was claimed and collected by the State as the estate tax imposed by P. L. 1116. The direct inheritance taxes assessed against the legacies or distributive shares of the testator's children, under P. L. 1049, were waived and only the estate tax was paid to the State Treasurer. The tax payments were made after considerable controversy and negotiation with the Federal Bureau of Internal Revenue, and were the result of a compromise which greatly reduced the sum from what was originally claimed. The decree of the Probate Court passed upon and specifically approved the compromise, and directed the executrix and the administrator c. t. a. to pay the sum of $20,000. to George P. Lemm, Esq. for professional services rendered by him in effecting it. The sum was thereafter paid, according to the Court's order. No claim was made, then or at any previous time, that the services performed by Mr. Lemm were furnished to Mrs. Everett personally or that they should be paid by her personally, or that any part of the taxes were payable by her personally. No objection was made to the decree or to any part of it, or to the account as allowed, by Mrs. Turri, or by anyone in her behalf, and no appeal was taken from it. Finally, it is found that the supplementary accounts in question are true and correct and that the executrix and administrator c. t. a. have properly charged and credited themselves in all respects, except as to a single item, not here in question, which is left for further accounting.

The appellant's thesis as presented by the exceptions is that there are assets of the estate for which the executrix and the administrator c. t. a. are chargeable, and for which they have not accounted, but should account. These assets are claimed to consist in a liability of Mrs. Everett to reimburse the estate for a portion of the Federal Estate Tax, and her liability to pay for the services of Mr. Lemm in effecting the compromise of the tax. The facts as shown by the evidence upon which the claims are based are these:

During the pendency of the will contest the estate was in charge of special administrators duly appointed by the Probate Court. On or about November 1, 1931, they filed with the Collector of Internal Revenue for the District of Vermont a federal estate tax return, showing a tax amounting to $13,712.87. On or about May 26, 1932, they received from the Deputy Commissioner of Internal Revenue a notice of intention to assess an additional estate tax of $478,108.71. A protest was filed and hearings took place at the office of the Collector of Internal Revenue in Boston, and before the Estate Tax Unit in Washington, following which a final deficiency letter was received from the Commissioner of Internal Revenue, wherein the deficiency tax was determined to be $373,226.69. The special administrators thereupon appealed to the United States Board of Tax Appeals. While the appeal was pending, and at the request of the Commissioner of Internal Revenue, a conference with respect to a possible settlement took place. Upon this the special administrators applied to the Probate Court for leave to offer a compromise which would result in the determination of the tax at the sum of $110,000 or less, and interest and penalties, this sum to include the Vermont taxes. Authority was granted by the court, and the special administrators retained Mr. Lemm to effect the compromise.

The return filed by the special administrators listed as an asset of the estate 656 shares of stock in the Edward H. Everett Company at a valuation of $163,000. In determining the deficiency tax the Commissioner of Internal Revenue increased this valuation to $683,781.60. He also included in the gross estate, as assets not returned, four transfers to Mrs. Everett, made by Mr. Everett in actual contemplation of death, as provided by the Federal statute (26 USCA para. 811(c)), at a valuation of $807,035.30; a jointly owned bank account, under the same statute (26 USCA para. 811(e) ) amounting to $5,225.04; and other transfers to Mrs. Everett of property valued at $1,523,703.32. This last item was not claimed to have been transfers made in contemplation of death; the reason for its inclusion was that the Commissioner considered that pending and threatened litigation might result in the transfers being set aside and the property returned to the estate. The deductions allowed, including the specific exemption of $100,-000. authorized by the statute (26 USCA para. 812(a) ), amounted to $624,953.12.

By the terms of the compromise the valuation of the Edward H. Everett stock was reduced from $683,781.60 to $492,000.; the transfers in contemplation of death were reduced in value from $807,035.30 to $350,000; the deductions, including the specific exemption, were increased from $624,953.12 to $851,357.74; and the transfers of property to Mrs. Everett originally valued by the Commissioner at $1,523,703.32, were eliminated as a basis for the tax, presumably because their return to the estate had been precluded by the release in the agreement of settlement, thus putting them in the class of transfers inter vivos, which are not included in the valuation of the gross estate in the determination of the Federal Estate Tax. *Heiner, Collector,* v. *Donnan,* 285 US 312, 322, 52 S Ct 358, 359, 76 L ed 772. The tax resulting from the compromise amounted to $105,612.14, with interest.

It is recognized by the appellant that the Federal Estate Tax is to be paid out of the estate as a whole; that the Act of Congress does not undertake in any manner to specify who among those interested in the estate shall bear the ultimate thrust of the tax, but leaves this to be determined by state law; (*Riggs* v. *Del Drago,* 317 US 95, 97-8, 63 S Ct 110-11, 87 L ed 106, 142 ALR 1131) ; that there is no statute of this state that specifies by whom the burden of the tax shall eventually be borne; and that the testator has given no direction in his will concerning the distribution of the tax, as he might have done, hence that it must be presumed to have been his intention to leave its impact where the law has left it, that is, upon his net estate. *Young Men's Christian Ass'n.* v. *Davis,* 264 US 47, 51, 44 S Ct 291, 292, 68 L ed 558; *Erickson* v. *Childs,* 124 Conn 66, 198 A 176, 180, 115 ALR 907; *Bemis* v. *Converse,* 246 Mass 131, 134, 140 NE 686, 687. But she contends that the provision that "all inheritance, succession and estate taxes on the property so divided (among the children) shall be paid by the estate," contained in the "Supplementary Clarifying Agreement," must be taken to mean that such part of the tax as was computed upon the gifts in contemplation of death and upon the joint bank account is the obligation of Mrs. Everett and should be paid by her to the estate; and also that Mrs. Everett is liable to the estate for the tax computed upon the difference between the valuation of $163,000. placed by the special administrators on the stock of the Edward H. Everett Company, which was divided among the children, and the valuation of $492,000. finally, and as the re-

sult of the compromise, placed upon it by the Commissioner of Internal Revenue.

Although they deny that this construction should be placed upon the agreement, the appellees insist that the issue cannot be raised because the decree of June 18, 1936, which approved the payment of the tax out of the estate, and from which no appeal was taken, is conclusive; and that by the provision in the agreement of settlement that any party might object to any claim for taxes on presentation for allowance thereof by the Probate Court the appellant, not having objected at that time, is estopped from making her present contention. The appellant, on her part, says that the question whether "Supplementary Clarifying Agreement" effected a distribution of the burden of the tax between Mrs. Everett and the children was not passed upon, or necessarily involved in, the decree, and so is properly here for consideration.

■ The "Supplementary Clarifying Agreement" is a part of the agreement of settlement, and must be read in connection with its other terms. We construe the provision that any party might object to claims for taxes upon presentation thereof for allowance by the court to apply not only to claims for taxes payable in the first instance out of the estate but also to disputes between the parties concerning the distribution of the ultimate burden of such taxes among them, for the purpose of reducing the expense to be met by the estate; and, further, that the agreement fixed the time at which objections should be made, if at all. The word "may" as employed therein is, under the circumstance, equivalent to "shall." See *Central Vt. R. Co.* v. *Royalton,* 58 Vt 234, 240, 4 A 868.

■ The decree was entered after full opportunity for all parties to be heard and to raise such objections as they, or any one of them, saw fit. That Mrs. Everett had received from her husband gifts in contemplation of death and that there was a bank account in their joint names were facts known to everyone interested in the estate. It must be presumed that the provision of the Internal Revenue Act which included these items in the valuation of the gross estate for the purpose of determining the tax was also known to the parties and their counsel. True, as the appellant says, the work sheets of the Treasury Department showing an analysis of the property forming a basis for the tax was not before the Probate Court at the hearing on the decree. But so far as appears, this was as accessible to the appellant then as at the hearing in the

present proceeding. Notice of hearing on the account showing the payment of taxes was given by the Probate Court on May 25, 1936. If the appellant had felt that she needed more time to investigate the matter she could and should have requested an adjournment of the hearing set for June 18, 1936, and this, upon a proper showing, no doubt would have been granted. Nothing appears to show that anything was fraudulently concealed from her by the appellees, or that they prevented her from obtaining full information on the subject. But she made no objection to the account or to anything that had been done or left undone by the representatives of the estate, and took no appeal from the decree. The question she presents here should have been raised at the hearing on the allowance of the account. It is too late for her to do so now.

Furthermore, the agreement of settlement was before the Probate Court at the time of the hearing, and the decree purports to be made in compliance therewith. We must assume that all the provisions agreed upon were considered and given effect in accordance with the Court's construction of them. If there was an error, which we are far from deciding, the remedy was by appeal and when this step was not taken, the decree became conclusive, and binding on the parties, in accordance with the principle announced in *Leavins, Adm.* v. *Ewins,* 67 Vt 256, 257, 31 A 297; *Sparrow* v. *Watson,* 87 Vt 366, 371, 89 A 468; and *In Re Warner's Estate,* 98 Vt 254, 269, 127 A 362.

Little need be added concerning the fee paid to Mr. Lemm. This item is not claimed to be covered by the aegis of the "Supplementary Clarifying Agreement." The contention is that the compromise resulted only in the benefit of Mrs. Everett and that she, and not the estate, should pay the expense of bringing it about, which amounts to saying that the item was not properly a debt of the estate and that the order for its payment was erroneous. If this were so, which we do not decide, the failure to appeal precludes the consideration of the question. The payment was a cost of administration and so comes within the terms of the agreement of settlement. What has been said regarding the tax applies here. We perceive no reason for disturbing the result reached by the trial court.

*Judgment affirmed. To be certified to the Probate Court for the District of Bennington.*