In re MISTURA, INC., Debtor.

**Lee MARCUS and Ann Marcus, Appellants,**

**v.**

**McKESSON DRUG COMPANY, a division of Foremost-McKesson, Inc., a Maryland corporation, Appellee.**

**BAP No. AZ–81–1061LHK. Bankruptcy No. B–20–2090PHX–VM. Ad. No. 80–0681–VM.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Sept. 16, 1981.

Decided June 24, 1982.

Opinion on Denial of Rehearing Sept. 9, 1982. See 24 B.R. 586.

J. Lawrence Dunlavey, Sidney B. Wolfe, Wolfe & Harris, P. A., Phoenix, Ariz., for appellants.

Peter Rathwell, Snell & Wilmer, Phoenix, Ariz., for appellee.

Before LASAROW, HUGHES and KATZ, Bankruptcy Judges.

## OPINION

HUGHES, Bankruptcy Judge:

This appeal questions the trial court's construction of Arizona's Commercial Code, its evidentiary rulings and, ultimately, its order holding that appellants' security interest in personal property is subordinate to appellee's.

### I

Mr. and Mrs. Marcus, the appellants, sold a drug store to Mistura, Inc., taking back a security interest in the personal property for the unpaid balance of the purchase price. They also leased the business premises to Mistura. Subsequently, Mistura sought financing from a number of sources and eventually obtained a loan from McKesson Drug Company, which was secured by the same personal property. Mistura filed Chapter 11 bankruptcy but does not assert an equity in the collateral. The only question is the relative priority of the security interests held by the Marcuses and McKesson.

Absent the effect of a particular statutory provision, it is conceded that McKesson would prevail because it filed its financing statement with the Secretary of State prior to the Marcuses. As to all of the collateral except fixtures, central filing with the Secretary of State is required. A.R.S. 44–3140(A)(3), U.C.C. 9–401(1)(c). The Marcuses had filed a financing statement with the county recorder long before the McKesson transaction but that was a proper filing only as to fixtures. A.R.S. 44–3140(A)(2).

The critical provision relied upon by the Marcuses is A.R.S. 44–3140(B) [U.C.C. 9–401(2)], which reads:

A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this article and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

Cross-motions for summary judgment led the trial court to consider that the only question of fact was whether McKesson had knowledge of the contents of the improperly filed financing statement. At the completion of appellants' case on this issue, McKesson moved to dismiss under Fed.Rule Civ.Proc. 41(b) for failure to show a right to relief. The motion was granted and this appeal seeking reversal or a new trial ensued.

We turn first to the Commercial Code issue.

### II

We infer from the totality of the record, including evidentiary rulings, that the trial court placed on the Marcuses the burden of proving that McKesson knew the contents of the financing statement from having seen it. The trial court thus joined those who construe the phrase "knowledge of the contents of such financing statement" to mean that "a searcher actually eyes the maverick financing statement." White and Summers, Handbook of the Law Under the Uniform Commercial Code, 2d ed. 1980, p. 949. A similar construction was reached by a federal court dealing with the same statute under Virginia law, *In re County Green Ltd. Partnership*, 438 F.Supp. 693 (W.D.Va. 1977).

On the other hand, a respectable number of cases have ruled that knowledge of the facts contained in a financing statement, even though learned in ignorance of the mis-filed financing statement, satisfies the requirement of "knowledge of the contents." The leading case is *In re Davidoff*, 351 F.Supp. 440 (S.D.N.Y.1972). This and other cases, such as *Grandview Farm Center, Inc. v. First State Bank of Grandview*, 596 S.W.2d 190 (Texas Ct. Appeals 1980), hold that actual knowledge of a prior security interest satisfies this requirement be-

cause a financing statement contains no more information.

We believe that *Davidoff* is better reasoned and represents the weight of authority. The statute by its terms requires only knowledge of the contents, not of the financing statement itself. Furthermore, the *County Green* decision suffers from its failure to cite, let alone critically analyze, *Davidoff*. But the question is not free from doubt. See White and Summers, supra.

### III

■ The question presented is one of state law. In the absence of a decision by the highest Arizona court, "we sit as a state court and look for guidance from intermediate appellate courts in [Arizona], and from courts in other jurisdictions which have recently considered the question." *Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1979), citing *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). We also "accord 'substantial deference' to the district judge's interpretation of the law of the state in which he sits." *Lewis v. Anderson*, supra, 781.

However, deference is not indicated unless the trial court has actually construed a statute. *Rabon v. Guardsmark, Inc.*, 571 F.2d 1277, 1279 (4th Cir. 1978). As stated above, we have inferred the court's ruling from the record. There is no opinion analyzing the statute and clues are provided largely through colloquy with counsel when ruling on evidence and in limiting the trial issues. The court repeatedly emphasized that the single issue was "actual knowledge" or "actual notice" rather than "constructive notice." Although there was reference to the "New York case", presumably *In re Davidoff*, supra, the court did so in the context of actual as compared to constructive notice.

The relevant clause of the controlling statute is "knowledge of the contents of such financing statement", but it is not clear whether the court distinguished between actual knowledge of the financing statement and actual knowledge of its con-

tents. Without that distinction, the statute was not construed in terms of *Davidoff* and *County Green*. The circumstances of this case preclude us according the trial court the usual deference.

The courts of Arizona have not ruled on the question, requiring both the trial court and this panel to "look for guidance . . . from courts in other jurisdictions which have recently considered the question."

■ We conclude that an Arizona Court, relying for construction of A.R.S. 44–3140(B) U.C.C. 9–401(2) entirely on decisions of other courts, would have followed the weight of authority as evidenced by *Davidoff*. Accord, *Franklin National Investment Corporation v. American Swiss Parts Company*, 42 Mich.App. 211, 201 N.W.2d 673 (1972).

### IV

Many of the trial court's evidentiary rulings were influenced by its construction of the statute, which we disapprove. Accordingly, most of appellants' citations of error are moot. We are confident that any evidence offered by appellants, whether direct or circumstantial, "having any tendency to make the existence of" McKesson's knowledge of the Marcus security interest "more probable . . . than it would be without the evidence" will not be excluded on grounds of relevance. F.R.Evid. 401. This, we take it, was the basis for most of the rulings excluding evidence.

To the extent the court is constrained to exclude evidence on any other grounds, it will prove helpful on any future review if the particular ground is evident from the objection or the ruling.

The order of dismissal is vacated and the case is remanded for a new trial.

KATZ, Bankruptcy Judge (dissenting):

I respectfully dissent. I believe the reversal is based on the proposition that the trial court should have decided this matter on the theories advanced in *In re Davidoff*, 351 F.Supp. 440 (S.D.N.Y.1972), rather than

those advanced in *In re County Green Ltd. Partnership*, 438 F.Supp. 693 (W.D.Va. 1977). Both of those cases interpret identical sections of the Uniform Commercial Code in question here, but reach different results. Both cases were decided by one-judge district courts, reviewing the decisions of a bankruptcy judge. In reality this amounts to a review of a trial court decision by another trial court.

In view of the fact that no court in Arizona has passed on this issue heretofore, I believe that the decision of the trial judge sitting in that jurisdiction must be given great deference and ought to be affirmed unless the judge's decision is an irrational one, and clearly wrong. *Hurst v. Dare to be Great, Inc.*, 474 F.2d 483 (9th Cir. 1973).

Unless there are clues as to the interpretation of the law by the courts of the state, courts of appeal ought not to reverse the trial court's determination of the meaning of the law.

In *Priest v. American Smelting & Refining Co.*, 409 F.2d 1229 (9th Cir. 1969), the court reversed the trial court because it found clues in dicta and other works indicating that if the state were presented with the precise question presented it would probably rule contrary to the ruling of the trial court. No such clues are in existence here.

While I might agree that *Davidoff* may be the better reasoned opinion on this matter, I cannot find that the trial court was clearly wrong or reached an irrational decision, and I therefore would accord substantial deference to the trial judge's interpretation of state law, *Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1979), and would affirm.